# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ROBERT BENNETT,<br>Petitioner,<br><br>vs.<br><br>WARDEN, ROSS<br>CORRECTIONAL INSTITUTION,<br>Respondent. | Civil Action No. 1:07-cv-889<br><br>Beckwith, J.<br>Black, M.J.<br><br>**ORDER AND REPORT AND<br>RECOMMENDATION** |

Petitioner, a state prisoner, brings this case *pro se* seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition (Doc. 2), respondent's return of writ and exhibits thereto (Doc. 13), and petitioner's motion for leave to file traverse instanter. (Doc. 16).

For good cause show, petitioner's motion for leave to file traverse instanter is **GRANTED**.

## I. FACTS

This case involves the following facts, as summarized by the Fourth District Ohio Court of Appeals:[1]

> {¶ 3} In September 2004, Stephanie Chandler and her two year old daughter, Kaylee Chandler, moved into the "Wayne Hills" community of Portsmouth, Ohio. The "Wayne Hills" community is apparently an apartment complex operated by the Portsmouth Metropolitan Housing Authority. One week later, appellant and his two children moved in with them.
>
> {¶ 4} On the night of October 4, 2004, Stephanie left Kaylee in appellant's care while she took a friend to the grocery store. Stephanie returned one half hour later and met "Frog," appellant's friend, who told her that something was wrong

---

[1] The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

with Kaylee. Stephanie entered Frog's apartment and found Kaylee unconscious and unresponsive, with her nose bleeding, her mouth "busted" and contusions all over her head. "Frog" did not have a phone in his apartment and Stephanie left to call her mother while someone else called for an ambulance. Stephanie explained that she needed her mother "to be there" because she "didn't know what to do" with Kaylee in that condition.

{¶ 5} Emergency personnel rushed Kaylee to the Southern Ohio Medical Center (SOMC) where she was diagnosed with severe head trauma that caused her brain to swell and impeded other bodily functions, including breathing. After Kaylee was stabilized, life-fight helicopter transported her to Children's Hospital in Columbus. After several days, tests revealed that Kaylee was brain-dead. Life support systems were removed and she was pronounced dead on October 8, 2004.

{¶ 6} On November 23, 2004, the Scioto County Grand Jury returned an indictment charging appellant with murder in violation of R.C. 2903.02(B). At his jury trial, appellant testified that he did nothing to hurt Kaylee and that she incurred various injuries when she fell out of bed, and a short time later, fell down stairs.

{¶ 7} That explanation did not coincide with the expert opinions of three doctors involved in the case, however. First, SOMC emergency room physician, Dr. James J. Wagenaar testified that her severe head trauma was neither consistent with falling out of bed nor with falling down stairs. Dr. Onsy Ayad, Children Hospital's attending physician in the Pediatric Intensive Care Unit, agreed that Kaylee's injuries were inconsistent with falling down stairs. Finally, Dr. Collie Trent, the forensic pathologist who performed the autopsy, testified that he did not believe that Kaylee's injuries occurred from falling out of bed or falling down stairs. Factors the doctors cited to discount the possibility that Kaylee fell out of bed and fell down stairs included that she did not display "linear bruising" or broken extremities that one might expect to find in such a fall. Dr. Wagenaar also revealed that Kaylee did have a broken arm, but the break was not a "splinter" type break that one could expect from a falling child. Rather, Kaylee displayed a "spiral" fracture consistent with her arm being "twisted" and broken. Also, a "patterned imprint" on the back of Kaylee's head lined up perfectly with a radiator removed from her bedroom. Dr. Trent opined that this patterned imprint, as well as the injuries she sustained, were consistent with Kaylee's head being "forced" into or slammed against that radiator. For these reasons, he determined Kaylee's death a "homicide."

{¶ 8} Additional evidence, including statements attributed to Shylee Bennett, appellant's own daughter, and his brother, George Bennett, implicated appellant. First, several witnesses, including a Wayne Hills neighbor and appellant's cousin, Jody Westwood, testified that when asked what happened to Kaylee that evening,

2

Shylee told them "daddy threw her down the stairs" or that her father "threw Kaylie upon the bed and her head hit the wall." We note, however, that Jody Westwood also testified that she asked Shylee several other times what happened to Kaylee, and Shylee either responded that she did not know or that Kaylee fell down the stairs. George Bennett, appellant's brother, recounted that he had two separate conversations with appellant and appellant confided that he might have "lost his temper" and that he "could have done it." Appellant, however, denied during his testimony, that he made such a comment to his brother.

{¶ 9} After four days of testimony, the jury found appellant guilty of murder. The court sentenced appellant to serve fifteen years to life in prison.

(Doc. 13, Exh. 5 at 3-4) (internal footnote omitted).

## II. PROCEDURAL HISTORY

### State Action – Trial

The 2004 Term of the Scioto County Grand Jury indicted petitioner on one count of murder as defined in Ohio Revised Code § 2903.02(B). (Doc. 13, Exh. 1). Following a jury trial, petitioner was found guilty of murder and sentenced to fifteen years to life imprisonment. (Doc. 13, Exh. 2).

### Direct Appeal

Petitioner, through new counsel, filed an appeal in the Fourth District Court of Appeals and raised the following assignments of error:

> 1. The trial court failed to exclude hearsay statements attributed to the defendant's two year old daughter under Evidence Rule 601(A).
>
> 2. The trial court improperly admitted multiple conflicting hearsay statements attributed to the defendant's two year old daughter as excited utterances under Evidence Rule 803(2).
>
> 3. The trial court instructions permitted the jury to make a series of improper inferences about the proof required to establish the elements of the offense of murder.

4. The trial court failed to exclude the testimony of the defendant's brother as plain error under RC 2317.01, Evidence Rule 103(D) and Criminal Rule 52(B).

5. The trial court failed to exclude an alleged prior unrecorded oral statement by defendant to his brother which the State withheld in discovery under Evidence Rule 403(A) due to the prosecution's willful violation of Criminal Rule 16(E)(B)(3).

6. The trial court failed to adequately circumscribe or remedy the prejudice to defendant caused by the State's withholding medical and autopsy records until trial. The testimony of Dr. James S. Wagenaar, Dr. Onsy Ayad, and Dr. Colley Trent, and the records referenced in their testimony should have been excluded. Their admission deprived defendant of substantive rights under Criminal Rule 16(E), Criminal Rule 52(B) and Evidence Rule 103(D).

7. The trial court failed to exclude the 911 audiotapes under Evidence Rules 401 and 403(A).

8. The trial court erred by admitting hospital and autopsy photographs under Evidence Rule 403(A). The record reflects that the photographs were gruesome, cumulative, and did not accurately reflect the child's condition *prior* to admission. The probative value was far outweighed by the danger of unfair prejudice, confusion of the issues and misleading the jury.

9. The cumulative effect of the trial court's errors deprived defendant of the constitutional right to a fair trial, under the 6th and 14th Amendments to the United States Constitution and Article I, Section 10 of the Constitution of the State of Ohio.

10. The trial court accepted the jury verdict of guilty, but there was not substantial evidence upon which the jury could reasonably conclude that all elements of the offense had been proven beyond a reasonable doubt.

11. The trial court accepted the jury verdict of guilty, but the circumstantial evidence relied upon to prove essential elements of the crime did not support a finding of guilty. The evidence was reconcilable with reasonable theories of the defendant's innocence.

(Doc. 13, Exh. 3). The State filed a brief in response. (Doc. 13, Exh. 4). On May 22, 2006, the Ohio Court of Appeals overruled petitioner's assignments of error and affirmed the judgment of the trial court. (Doc. 13, Exh. 5).

Petitioner, through counsel, filed a timely notice of appeal in the Supreme Court of Ohio and presented a single issue for review: "Should Evid. R. 803(2) 'excited utterance' exception be applied to allow introduction of multiple conflicting hearsay statements by the same two year old child?" (Doc. 13, Exh. 6). The State filed a response in opposition. (Doc. 13, Exh. 7). On October 4, 2006, the Supreme Court of Ohio declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. (Doc. 13, Exh. 8).

## Federal Habeas Corpus

On October 23, 2007, petitioner filed the instant petition for writ of habeas corpus setting forth the following grounds for relief:

> **GROUND ONE:** Defendant's constitutional rights under the Sixth Amendment were violated when the trial court permitted the introduction of ex parte hearsay evidence.
>
> **Supporting Facts**: See accompanying memorandum [at pages 8-11].
>
> **GROUND TWO:** Defendant's due process rights were violated by a prosecutor who withheld discovery from the defense and a trial court condoned such conduct.
>
> **Supporting Facts**: See accompanying memorandum [at pages 12-15].

(Doc. 2, petition).

## III. STANDARD OF REVIEW

On federal habeas review, the factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1). *See McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This Court is bound by the state court adjudications unless those decisions are contrary to or an unreasonable application of clearly established federal law.

*Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The phrases "contrary to" and "unreasonable application" have independent meanings:

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in . . . [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable . . . and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted).

However, if a state court does not articulate the reasoning behind its decision or fails to address the constitutional issues, the federal court must look at the state court's decision and conduct an independent inquiry into whether the state court reached a decision contrary to clearly established federal law or based its decision on an unreasonable determination of the facts in light of the evidence presented. *Schoenberger v. Russell,* 290 F.3d 831, 835 (6th Cir. 2002); *Harris v. Stovall,* 212 F.3d 940, 943 & n. 1 (6th Cir. 2000), *cert. denied*, 532 U.S. 947 (2001). The review is not a full *de novo* review of the claims, but is deferential to the state

court's determination. *Id.*

## IV. GROUND ONE OF THE PETITION IS PROCEDURALLY DEFAULTED AND WAIVED.

Ground One of the petition asserts that the trial court impermissibly admitted hearsay testimony of Shylee Bennett in violation of the Confrontation Clause to the United States Constitution. Respondent contends this ground for relief is procedurally defaulted and waived for purposes of habeas corpus review.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99-100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If the petitioner fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, *e.g.*, to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

Federal courts may not consider "contentions of federal law that are not resolved on the merits in the state proceeding due to petitioner's failure to raise them as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). If petitioner fails to fairly present his claims through the requisite levels of state appellate review to the state's highest court, or commits some other procedural default to preclude review of the merits of petitioner's claims by the state's highest court, and if no avenue of relief remains open or if it would otherwise be futile for petitioner to continue to pursue his claims in the state courts, the claims are subject to dismissal with prejudice as waived. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to

> demonstrate that there was cause for him not to follow the procedural rule and
> that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001), *cert. denied*, 535 U.S. 1031 (2002) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In determining whether a state court rested its holding on a procedural default so as to bar federal habeas review, "the last state court rendering a judgment in the case must have based its judgment on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Couch v. Jabe*, 951 F.2d 94, 96 (6th Cir. 1991)). Normally, a federal habeas court will find that a petitioner procedurally defaulted if the last state court rendering a decision makes a plain statement to that effect. *Harris,* 489 U.S. at 261. No such statement is necessary, however, if the petitioner failed to present the relevant issues to the state court. *Id.* at 263 n. 9; s*ee also Teague v. Lane*, 489 U.S. 288, 297-298 (1989) (plurality opinion)("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding."). In that event, the federal habeas court may hold the claim procedurally defaulted "if it is clear that the state court would hold the claim procedurally barred." *Harris*, 489 U.S. at 263 n.9.

If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the instant case, the Court finds that Ground One of the petition is procedurally

defaulted because petitioner failed to object to Shylee's out of court statements on the basis that the admission of such statements violated his rights under the Confrontation Clause. In addressing this claim of error, the Ohio Court of Appeals stated:

> {¶ 10} We jointly consider appellant's first, second and third assignments of error because they all involve the statements attributed to appellant's daughter, Shylee Bennett. Appellant asserts that Shylee's statements constitute inadmissible hearsay and should have been excluded from evidence. By allowing several witnesses to testify about those statements, and by instructing the jury as to on how to consider them in its deliberations, appellant concludes the trial court committed reversible error.
>
> {¶ 11} Appellant offers various arguments why the trial court should have excluded the statements from evidence. First, he cites Evid. R. 601(A) and R.C. 2317.01 for the proposition that generally children under the age of ten cannot testify. Shylee did not testify at trial, however. Additionally, an excited utterance does not generally involve an inquiry relating to a declarant's Evid. R. 601 competency as a witness. . . .
>
> {¶ 12} Next, appellant argues that the trial court erred by allowing reference to Shylee's statements under the "excited utterance" exception of Evid. R. 803(2). An "excited utterance" is defined as a "statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Id. The Ohio Supreme Court has ruled that a hearsay statement may be admitted under this exception when a trial court determines the following four factors exist: (1) an occurrence startling enough to produce nervous excitement in the declarant, sufficient to still his reflective faculties and make statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and render his statement or declarations spontaneous and unreflective, (2) the declaration, if not strictly contemporaneous with its exciting cause, was made before sufficient time elapsed for such nervous excitement to lose domination over reflective faculties, so that such domination continued to remain sufficient to make statements the unreflective/sincere expression of his actual impressions and beliefs, (3) the declaration related to such startling occurrence or the circumstances of such startling occurrence, and (4) the declarant had an opportunity to personally observe the matters asserted in his declaration. *State v. Wallace* (1988), 37 Ohio St .3d 87, 89, 524 N.E.2d 466; *State v. Duncan* (1978), 53 Ohio St.2d 215, 373 N.E.2d 1234, at paragraph one of the syllabus.
>
> {¶ 13} There is no question that the events at issue in this case produced a "nervous excitement" in Shylee. Everyone involved in this case testified what the

unsettling sight of a two year old child who had suffered blunt head trauma. Moreover, Richard Snyder, the neighbor to whom Shylee made these comments, testified that Shylee was crying and that he attempted to comfort her just before she made the statements. Jody Westwood, Shylee's aunt and guardian, also heard the statements and testified that Shylee was afraid of the police and thought they were coming to get her.

{¶ 14} Although Shylee's statements may not have been strictly contemporaneous to Kaylee's injuries, sufficient evidence established that the statements were within a time frame where her "nervous excitement" exerted domination over her reflective faculties. The evidence points to Kaylee receiving her injuries during the half hour that her mother was at the store. Upon her return, a crowd gathered near "Frog's" apartment and somebody called an ambulance. Russ Crabtree, one of the emergency personnel, testified that their station was "just minutes away" from "Frog's" apartment and that they responded to the emergency call with lights and siren. Shylee's comments to her aunt and to Snyder occurred shortly after their arrival. From this evidence, one may conclude that Shylee's declarations occurred less than an hour after Kaylee's injuries.

{¶ 15} Shylee's comments also related to the startling occurrence. Jody Westwood asked Shylee what happened to Kaylee, and Shylee responded that her father threw Kaylee down the stairs or against the wall. Finally, sufficient circumstantial evidence established that Shylee personally observed the matter about which she made the declaration. Dr. Trent testified that the "patterned imprint" on the back of Kaylee's head matched the radiator in Kaylee's bedroom. Appellant testified that Kaylee and Shylee were playing together in the bedroom when Stephanie Chandler went to the store. One can conclude that Shylee could have observed what had occurred.

{¶ 16} In the end, we must affirm the trial court's decision to apply the Evid. R. 803(2) "excited utterance" exception if it is "reasonable." *Wallace,* supra at 90. In light of the evidence set forth above, and after taking into account the trial court's and counsel's careful and considered discussion of this issue during a bench conference, we conclude that the court reasonably determined that Shylee's declarations constitute "excited utterances."

{¶ 17} Appellant also cites *Crawford v. Washington* (2004), 541 U.S. 36, 59-60, 158 L.Ed.2d 177, 124 S.Ct. 1354, in which the United States Supreme Court held that testimonial statements of witnesses absent from trial may be admitted into evidence only when the declarant is unavailable and when the defendant had a prior opportunity to cross-examine the declarant. Otherwise, the admission of such statements violates a defendant's confrontation rights.

{¶ 18} We reject appellant's argument in the case sub judice for two reasons.

> First, appellant did not raise the *Crawford* issue at trial. Thus, he waived it for purposes of appeal. See, generally, *State v. Peagler* (1996), 76 Ohio St.3d 496, 499, 668 N.E.2d 489; *State v. Lott* (1990), 51 Ohio St.3d 160, 174, 555 N.E.2d 293. Second, we note that *Crawford* only involved "testimonial statements." Although the court did not provide a clear test for what constitutes a "testimonial statement," it did say that it was in the nature of a solemn declaration or affirmation made to establish or to prove a fact, such as ex parte in court testimony, affidavits, custodial examinations, depositions, confessions or statements made under circumstances that would lead a witness to reasonably believe that the statement would be available for use at a later trial. 541 U.S. at 51-52. By contrast, a "casual remark to an acquaintance" does not bear testimony in the manner which the confrontation clause was meant to address. Id. at 51.
>
> {¶ 19} We do not believe that Shylee's comments to her guardian and to her neighbor are similar to the testimonial statements at issue in *Crawford*. We find nothing surrounding the circumstances of her comments that suggests at the time that they could have been used at a later trial against her father. Thus, her non-testimonial comments are governed by the rules of evidence on hearsay. See *State v. Blakely,* Lucas App. No. L-03-1275, 2006-Ohio-185, at ¶ 24, fn. 2.

(Doc. 13, Exh. 5 at 4-7) (internal footnote omitted).

This Court's review of the transcript of proceedings indicates that petitioner failed to raise a Confrontation Clause objection to Shylee's statements at trial. *See* Doc. 13, Tr. 83-114. Petitioner thus committed a procedural default of his confrontation claim when he failed to object to Shylee's statements on the basis of the Confrontation Clause during the trial as acknowledged by the Ohio Court of Appeals in its decision.

Under Ohio law, the failure to raise a contemporaneous objection to a perceived error in the trial court constitutes a procedural bar to review of the error on direct appeal. *Scott v. Mitchell*, 209 F.3d 854, 866 (6th Cir. 2000) (citing Ohio R. Crim. P. 52; *State v. Williams*, 51 Ohio St.2d 112, 364 N.E.2d 1364 (1977) (citations omitted)), *cert denied*, 531 U.S. 1021 (2000). The Sixth Circuit has consistently held that "'Ohio's contemporaneous objection rule constitutes an adequate and independent state ground that bars federal habeas review absent a showing of

cause and prejudice.'" *Mason v. Mitchell*, 320 F.3d 604, 635 (6th Cir. 2003) (quoting *Hinkle*, 271 F.3d at 244); *accord Seymour*, 224 F.3d at 557; *Scott* v. Mitchell, 209 F.3d 854, 866-71 (6th Cir.), *cert. denied*, 531 U.S. 1021 (2000). The Ohio Court of Appeals' discussion of petitioner's *Crawford* claim on the merits does not alter the Court's conclusion that petitioner's Confrontation Clause claim is barred by procedural default. "[A] federal court need not reach the merits of a habeas petition where the last state-court opinion clearly and expressly rested upon procedural default *as an alternative ground.*" *McBee v. Abramajtys,* 929 F.2d 264, 267 (6th Cir. 1991) (citing *Harris v. Reed,* 489 U.S. 255, 264, n. 10 (1989)) (emphasis in the original); *see also Atkins v. Phillips,* 238 F.3d 419, 2000 WL 1720719, 3 (6th Cir. 2000) (unpublished) ("A state court does not fail to rely upon a procedural default by ruling on the merits in the alternative.") (citing *McBee*, 929 F.2d at 267). In addition, the Supreme Court of Ohio's subsequent unexplained decision declining jurisdiction and dismissing petitioner's appeal for lack of a substantial constitutional question must be presumed to rely on the same procedural default. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *cf. Taqwiim v. Johnson,* 229 F.3d 1154 (table), No. 99-3425, 2000 WL 1234322, at * *3 (6th Cir. Aug. 22, 2000) (unpublished) (citing *Ylst* and *Levine v. Torvik,* 986 F.2d 1506, 1517 n. 8 (6th Cir .), *cert. denied,* 509 U.S. 907 (1993), and *overruled in part on other grounds by Thompson v. Keohane,* 516 U.S. 99 (1995)), *cert. denied,* 531 U.S. 1089 (2001).

Accordingly, procedural default bars consideration of Ground One of the petition absent a showing of cause and prejudice or that a "fundamental miscarriage of justice" will result if the claim is not considered.

Petitioner has not provided any justification as "cause" for his procedural default. Since

13

both cause and prejudice must be shown to excuse a procedural default, petitioner's failure to establish cause eliminates the need to consider prejudice. *Murray v. Carrier*, 477 U.S. 478, 494-95 (1986).

Nor has petitioner shown that if his claims are not considered on the merits a "fundamental miscarriage of justice" will occur; that is, that the alleged constitutional violations "probably resulted in the conviction of one who is actually innocent" of the crimes charged. *See Murray,* 477 U.S. at 495-96; *see also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *cf. Souter v. Jones,* 395 F.3d 577, 597-602 (6th Cir. 2005). The actual innocence exception to the rule barring review of procedurally defaulted claims is premised on new, reliable evidence that was not available to the petitioner at trial. As explained by the Supreme Court:

> Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim. However, if a petitioner . . . presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims.

*Schlup,* 513 U.S. at 316.

To establish a credible claim of actual innocence, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup,* 513 U.S. at 324. Petitioner must also show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that evidence alleged "to have become available only after the trial." *Id.* at 327-28.

"[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). *See also Hilliard v. United States,* 157 F.3d 444, 450 (6th Cir. 1998). The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Schlup,* 513 U.S. at 321.

Here, petitioner fails to present any new evidence of his actual innocence. Rather, he argues that the "cumulative effect of errors in a murder trial, such as is the case in the instant matter, warrant grant of habeas corpus relief, although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal." (Doc. 16 at 5). Cumulative error claims are not cognizable on habeas corpus and cannot provide a basis for establishing petitioner's claim of actual innocence. *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) ("The law of this Circuit is that cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken on this issue.") (citing *Moore v. Parker,* 425 F.3d 250, 256 (6th Cir. 2005). *See also Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), *cert. denied*, 127 S.Ct. 1485 (2007) (holding that while errors might accumulate to produce unfair trial setting, Supreme Court has never held distinct claims can accumulate to grant habeas relief). Since petitioner does not present any new evidence in connection with his habeas claim, he fails to establish a credible claim of actual innocence to permit federal court review of his procedurally defaulted Confrontation Clause claim.

Accordingly, the undersigned concludes that petitioner is not entitled to habeas relief

based on the claim alleged in Ground One of the petition because he has waived such claim of error due to his procedural default.

## V. GROUND TWO IS PROCEDURALLY DEFAULTED AND WAIVED.

Ground Two of the petition asserts petitioner's right to a fair trial was violated when the prosecutor withheld discovery from the defense and the trial court condoned such actions. This ground for relief is procedurally defaulted because petitioner failed to raise this claim on discretionary appeal to the Supreme Court of Ohio. *See O'Sullivan*, 526 U.S. at 845, 847-48; *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The procedural default in this matter occurred when petitioner failed to include any prosecutorial misconduct or discovery claims as issues for review before the Supreme Court of Ohio on discretionary appeal. *See Leroy v. Marshall,* 757 F.2d 94, 97, 100 (6th Cir. 1985). Petitioner has thus procedurally defaulted Ground Two for purposes of federal habeas corpus review because he did not provide the highest state court in Ohio with an opportunity to correct any alleged constitutional error. *See id.* Consequently, petitioner is now barred by his procedural default from pursuing relief in the state courts of Ohio. *Leroy,* 757 F.2d at 100.

Petitioner has failed to establish cause and prejudice to excuse his procedural default of Ground Two of the petition. Nor has he demonstrated that failure to consider any procedurally defaulted claim will result in a fundamental miscarriage of justice. Accordingly, he has waived any constitutional claim associated with Ground Two of the petition for purposes of federal

habeas corpus review.[2]

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 2) should be DENIED with prejudice.

2. A certificate of appealability should not issue with respect to Grounds One and Two of the petition which this Court has concluded are waived and thus barred from review on procedural grounds because under the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[3]

3. The Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, DENY petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: 12/16/2008                             s/Timothy S. Black
                                             Timothy S. Black
                                             United States Magistrate Judge

---

[2] In his traverse, petitioner argues that he was deprived of a fair trial by the admission of the prejudicial testimony of his brother, George Bennett. (Doc. 16 at 3-4). Petitioner did not raise this claim as a ground for relief in his habeas petition. *See* Doc. 2. In any event, this claim has also been procedurally defaulted because it was never raised as an issue on appeal to the Supreme Court of Ohio.

[3] Because this Court finds that petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim. *See Slack,* 529 U.S. at 484.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| ROBERT BENNETT,<br>　　　Petitioner,<br><br>vs.<br><br>WARDEN, ROSS<br>CORRECTIONAL INSTITUTION,<br>　　　Respondent. | Civil Action No. 1:07-cv-889<br><br>Beckwith, J.<br>Black, M.J. |

## NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Black, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within fifteen (15) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).